UNITED STATES of America, The Board of Trustees of the Internal Trust Fund of the State of Florida, and the State of Florida Department of Natural Resources, Plaintiffs,

v.

M/V MISS BEHOLDEN, (St. Vincent and Grenadines Official Number 2844) her engines, apparel, tackle, appurtenances, etc., in rem, and Blue Fields Shipping, Inc., a Florida corporation, Bluefields Marine, Ltd., a foreign corporation, Louis O'Meir, Harold Benedict and Adrian Benedict, in personam, Defendants.

No. 93–10024–CIV.

United States District Court, S.D. Florida.

June 27, 1994.

Peter F. Frost, Asst. U.S. Atty., U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for plaintiff.

David M. Mermell, Coral Gables, FL, Carlos Castillo, Miami, FL, for defendant.

## ORDER GRANTING UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon the United States' Motion for Partial Summary Judgment (D.E. # 62), filed May 20, 1994. The Clerk advises this Court that no Response to the instant motion has yet been received, and the time period to respond has since lapsed.

### I. Introduction

This action arises out of the grounding of the M/V Miss Beholden, a 147-foot long Grenadian flag freighter, on the Western Sambo Reef, off Key West, Florida on March 13, 1993. The United States seeks damages pursuant to the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. § 1431 *et seq.*, which provides that "any person who destroys, causes the loss of, or injures any sanctuary resource is liable to the United States for response costs and damages resulting from such destruction, loss or injury." 16 U.S.C. § 1443(a)(1). The United States argues that the undisputed facts establish that Defendants are strictly liable *in personam* under the NMSA and moves the Court for partial summary judgment on the issue of liability.

### II. Standard for Summary Judgment

Summary judgment is appropriate only where it is shown that no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In ruling on the moving party's motion, the court must view the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Initially, the moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913 (11th Cir.1993), *reh'g denied,* 16 F.3d 1233 (11th Cir.1994). To meet this burden, the non-moving party must go beyond the pleadings. If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the Court should refuse to grant summary judgment. *Id.*

### III. Analysis

In this case, Plaintiff (the Government) has met its burden of proof establishing that no genuine issue of fact exists to preclude summary judgment. Specifically, the Government has shown that on March 13, 1993, the M/V Miss Beholden intentionally ran aground upon the Western Sambo Reef, a reef within the Florida Keys National Marine Sanctuary, causing injury or destruction to approximately 1,025.6 square meters of live coral and 133.5 square meters of established reef framework. The Coast Guard Message Alert Sitrep One, attached to the Government's motion as Attachment # 3, conclusively establishes the events leading up to the grounding. Initially, the M/V Miss Beholden notified the Coast Guard that it was taking on water. A Coast Guard helicopter dropped a pump onto the vessel which the crew of the vessel used to stabilize the flooding.

> The Key West pilot [then] stated he would not be able to board the [vessel] to assist the [vessel's] entry into Key West and recommended the [vessel] anchor southwest of Tank Island. The subj[ect] [vessel] stated it started to [take on water] more rapidly again and intentionally grounded the vessel in position 24–28,47 081–42.63w.

(Coast Guard Message Alert Sitrep One, Attachment # 3, Plaintiff's Motion for Partial Summary Judgment).

Defendants have offered no evidence to refute these facts. Indeed, Defendants have

failed to respond to the instant Motion for Partial Summary Judgment. To meet their burden of proof, Defendants must do more than merely rely on the pleadings. They must offer some affirmative evidence whether by affidavit or exhibit tending to show the existence of a genuine issue of material fact. Since Defendants have chosen not to respond and since there is no evidence in the record tending to dispute the facts asserted by the Government, the Court will accept the facts described above as true.

Thus, the only question to be determined is whether, given these facts, Defendants are liable under the NMSA as a result of the grounding of the M/V Miss Beholden upon Florida's coral reef. The Government argues that the NMSA imposes strict liability. If the Government is correct, it need only show that the grounding of the M/V Miss Beholden caused injury or destruction to the Western Sambo Reef.

■ No court has addressed this precise question. However, it is well settled with regard to the Clean Water Act ("FWPCA") and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") upon which the liability provisions of the NMSA were modeled, that strict liability attaches. *See, e.g. Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1150 (1st Cir.1989) (CERCLA), and *United States v. M/V Big Sam,* 693 F.2d 451, 453 (5th Cir.1982), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983) (FWPCA). Given the similarities between the liability provisions of these statutes and the NMSA, the Court finds that the strict liability interpretation of CERCLA and FWPCA should be extended to NMSA.

■ The NMSA provides that any person who destroys, causes the loss of or injures any sanctuary resource is liable to the United States for damages resulting from the loss, injury or destruction and response costs. It is undisputed that the M/V Miss Beholden ran aground on Western Sambo Reef and that, as a result of the grounding, portions of the live coral reef were injured or destroyed. Indeed, the Declaration of J. Harold Hudson, a Regional Biologist for the Florida Keys National Marine Sanctuary who assessed the grounding site of the M/V Miss Beholden, establishes that the grounding of the vessel resulted in damage to over 1000 square meters of the coral reef. (*See* United States' Motion, Attachment # 4). Thus, Defendants are subject to liability for the damage caused unless they can prove an appropriate defense.

The defenses available to Defendants under the NMSA are explicitly set forth in the statute:

A person is not liable under this subsection if that person establishes that—

(A) the destruction or loss of, or injury to, the sanctuary resource was caused solely by an act of God, an act of war, or an act or omission of a third party, and the person acted with due care;

(B) the destruction, loss or injury was caused by an activity authorized by Federal or State law; or

(C) the destruction, loss, or injury was negligible.

16 U.S.C. § 1443(a)(3).

■ The facts of this case suggest that Defendants could not succeed on any of the articulated defense theories. Since Defendants have not responded to the Motion for Partial Summary Judgment, the Court can only assume which defenses Defendants might assert. Defendants best defense would be that the grounding of the M/V Miss Beholden was caused by an act of God. However, given the facts in the record, even this theory would fail. The Government has shown that Defendants knew or should have known that severe weather conditions were expected for March 13, 1993, therefore it would be difficult for Defendants to establish the due care necessary to avoid liability. Specifically, the Government has shown that the weather forecasts as early as March 11, 1993 warned of the development of stormy weather in the area surrounding the Florida Keys. In fact, the Coastal Waters Marine Forecasts and Warnings issued by the Miami, Florida, Forecast Office during the period from March 11, 1993 to March 13, 1993, attached to the Government's Motion as Attachment # 2, show that at 4:30 a.m on March 13, 1993, the weather service issued

gale warnings and a tornado watch for the area surrounding the Florida Keys.

There are no facts in the record to support a defense that the destruction of the reef was caused by an act or omission of a third party. Nor can Defendants rely on the act of war defense. It is also clear that Defendants' activity was not authorized by Federal or state law. And, certainly, the record does not support a finding that the damage caused was negligible given that the record contains evidence that over 1000 square meters of the coral reef were damaged.

Thus, viewing the evidence in the light most favorable to Defendants, the Court cannot find that the undisputed facts support any of the defenses to liability available to Defendants under the statute. Therefore, the Court concludes that Defendants can prove no set of facts that would preclude summary judgment on the issue of liability.

### IV. Conclusion

For the reasons stated herein, the Court holds that summary judgment is appropriate on the issue of liability. Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the United States' Motion for Partial Summary Judgment be, and the same is hereby, GRANTED, establishing that Defendants are strictly liable *in personam* to the United States for damages to be proved at trial.

DONE and ORDERED in chambers at the United States District Courthouse, Federal Justice Building, Miami, Florida, this 27th day of June, 1994.