**KS FINANCIAL GROUP, INC., Plaintiff,**

v.

**Jack SCHULMAN, Estate of Jack Schulman, and Judye Schulman, Defendants,**

**Primerica Insurance Co., Garnishee/ Third Party Plaintiff,**

**United States of America, Third Party Defendant.**

**No. 1:98–CV–783–WBH.**

United States District Court, N.D. Georgia.

Sept. 23, 1999.

---

**6.** Because Defendant's Motion for Summary Judgment is granted, whether Selby is entitled to back pay is moot.

Michael Joseph Ernst, Kevin Ross Wolff, Stokes Lazarus & Carmichael, Atlanta, GA, Jay G. Davis, Cynthia Lynae Weese, Bryant Davis & Cowden, Atlanta, GA, Charles Emmett Wheelock, Conoscienti & Storm, Decatur, GA, for KS Financial Group, Inc., plaintiff.

Gene Mac Winburn, Winburn Lewis & Barrow, Athens, GA, for Judye S. Schulman, defendant.

James Randolph Schulz, Office of United States Attorney, Atlanta, GA, Michael N. Wilcove, pro hac vice, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America, third-party defendant.

Thomas T. Tate, Jonathan Dean Crumly, Andersen Davidson & Tate, Lawrenceville, GA, for Primerica Life Insurance Company, garnishee.

### ORDER

HUNT, District Judge.

This action, involving the relationship between the Insolvency Statute, 31 U.S.C. § 3713(a), and the Federal Tax Lien Act of 1966, 26 U.S.C. § 6321 *et seq.*, is before the Court on cross-motions for summary judgment filed by third-party defendant United States of America [11–1] and by plaintiff KS Financial Group, Inc. [22–1]. For the reasons stated below, the motion of the United States is GRANTED IN PART and DENIED IN PART, and the motion of KS Financial is GRANTED.[1]

## I. BACKGROUND

This is a priority contest among the United States, KS Financial and Judye S. Schulman to funds in the estate of Judye Schulman's deceased husband Jack P. Schulman. The facts are largely undisputed: Jack Schulman died intestate on June 30, 1996. Jack Schulman had been an independent contractor sales representative for Primerica Life Insurance Company ("Primerica").[2] As such a sales representative, he sold life insurance policies for Primerica, and received a commission after Primerica received its first premium payment on each policy he sold. He also received a commission each time one of his customers renewed a policy that he sold, known as a "renewal commission." Additionally, he supervised other salespersons, and received a commission called an "override" each time a subordinate sold a policy. Finally, he received a renewal commission whenever one of his subordinate's customers renewed a policy, just as he did when one of his customers renewed a policy that he had sold himself. So long as these policies remained in effect, Mr. Schulman was not required to take any further action to receive renewal commissions—these renewal commissions were considered "vested." Pursuant to Mr. Schulman's contract with Primerica, his estate continues to receive renewal commissions to this day.

The estate is encumbered by considerable debts, however. First, the government asserts claims for unpaid taxes against Jack P. and Judye S. Schulman jointly for tax years 1991 ($104,000) and 1992 ($141,000). These claims are secured by federal tax liens filed in Fulton County Superior

---

1. The Court GRANTS the government's motion to correct a typographical error [27–1].

2. The record does not indicate when Mr. Schulman began as a sales representative for Primerica.

Court. The government also seeks unpaid taxes against Jack Schulman alone for tax years 1995 ($89,000) and 1996 ($49,000).[3] Importantly, as these assessments against Mr. Schulman were not made until after his death, federal tax liens do not attach to these liabilities and they are unsecured. Second, KS Financial seeks $124,217.67, plus interest, costs and attorney's fees arising out of a 1993 default judgment entered against Jack and Judye Schulman in a Texas State Court. Third, Judye Schulman seeks a year's support award of $212,802.84. Her application for this amount is pending in the Fulton County Probate Court.

Primerica currently holds the commission funds that are the subject of this lawsuit. It is unclear how much these funds total, but the parties agree that not enough money is currently in the estate to pay all of its debts. Also, the parties appear to agree that there is a possibility that the estate will eventually receive enough money to pay all claims. Primerica awaits a court order as to how to disburse the funds it is now holding.

## II. DISCUSSION

Through its motion, the government contends that it is entitled to first priority to all commissions due Mr. Schulman's estate until all of the federal income tax liabilities are paid in full. In response, KS Financial concedes that the federal tax liens securing the 1991 and 1992 federal income tax liabilities of Jack and Judye Schulman are superior to its claim to the commissions. Nevertheless, it contends in its motion that it is entitled to priority over the government's claims for the 1995 and 1996 income tax liabilities of Jack Schulman because it is a perfected secured creditor with priority under the Federal Tax Lien Act. Finally, Judye Schulman concedes that her interest to the interpleaded funds is subordinate to the government's claim pursuant to its federal tax liens securing the joint and several federal income tax liabilities of Jack Schulman for 1991

and 1992. She asserts that her claim for year's support is superior to the government's claim for the unsecured federal income tax liabilities of Jack Schulman for 1995 and 1996. The Court will address these contentions in turn.

### A. Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court shall grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the nonmoving party bears the burden of proof at trial, the moving party must demonstrate to the Court that "there is an absence of evidence to support the nonmoving party's case," *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or must put forth affirmative evidence negating an element of the nonmoving party's case, *Fitzpatrick v. Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993). It is then the responsibility of the nonmoving party, by revealing evidence outside of the pleadings, to show that evidence supporting its case does exist or that the element sought to be negated remains a genuine issue of material fact to be tried. *Id.* Essentially, this requires the nonmoving party to come forward with evidence sufficient to withstand a directed verdict on this issue at trial. *Id.* at 1116–17.

The nonmoving party is not required to carry its burden of proof at the summary judgment stage. In analyzing the case, the Court views the facts in the light most favorable to the nonmoving party and makes all factual inferences in favor of that party. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 918 (11th Cir. 1993). "The court must avoid weighing conflicting evidence or making credibility determinations." *Id.* at 919. "Where a reasonable fact finder may 'draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant

---

**3.** Because interest continues to accrue, all of these tax amounts are approximate.

summary judgment.'" *Id.* (quoting *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir.1989)).

## B. Analysis

During the course of briefing the summary judgment motions, the parties agreed that the federal tax liens securing the 1991 and 1992 federal income tax liabilities of Jack and Judye Schulman are to be paid first. Therefore, the dispute has been substantially narrowed and now concerns the order of the remaining claims. The government contends: (1) that its claims for the 1995 and 1996 income tax liabilities of Jack Schulman come next; and (2) that KS Financial's claim for the Texas default judgment follows. The Court does not agree.

Because the 1995 and 1996 federal income tax liabilities were assessed after Mr. Schulman died, the parties agree that federal tax liens securing those liabilities do not attach to the renewal commissions. Nevertheless, the government contends that its claims for these tax liabilities have priority over the other claims in this action because of the Insolvency Statute, 31 U.S.C. § 3713(a)(1)(B), which provides that "a claim of the United States government shall be paid first when—the estate of a deceased debtor, in the custody of the executor, or administrator, is not enough to pay all debts of the debtor." KS Financial has launched an attack on the applicability of the Insolvency Statute to the present case, which the Court will now address.

KS Financial bases its attack in large part on the recent case of *United States v. Estate of Romani,* 523 U.S. 517, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998), in which the Supreme .Court addressed the interplay between the Insolvency Statute and the Federal Tax Lien Act. There, the Supreme Court resolved a dispute that had been brewing for more than 100 years and held that the Insolvency Statute does not res-

cue the government's unsecured claim where: (1) the estate is insolvent, (2) both a judgment creditor and the United States had acquired liens on the estate's real property, but (3) the judgment creditor's lien had priority over the federal tax liens. "[N]othing in the text or the long history of interpreting the [Insolvency Statute] justifies the conclusion that it authorizes the equivalent of a secret lien as a substitute for the expressly authorized tax lien that Congress has said 'shall not be valid' in a case of this kind." *Romani,* 523 U.S. at ——, 118 S.Ct. at 1488.

The rule from *Romani* is clear—in instances where, as here, a federal tax lien does not exist, the Insolvency Statute does not permit an unsecured federal tax claim be given preference over a judgment creditor's *perfected* lien on real property. *Id.* at 1480–81 (emphasis added). Assuming that *Romani* applies to personal as well as real property, the question in the present case is whether KS Financial perfected its claim to the interpleaded funds.[4] If so, *Romani* applies and KS Financial has priority.

On March 29, 1996, before Mr. Schulman died, KS Financial sought to perfect its lien by issuing a summons of garnishment through the Texas courts. The government attacks the validity of this lien by noting that Texas law limits the extent to which a creditor may garnish unpaid commissions for personal services. *See* Tex. Prop.Code § 42.001(d). The government points out that for individuals who are members of a family, such as Mr. Schulman, this section provides that commission payments up to the amount of $15,000 are exempted from garnishment. *Id.* Noting that none of the commission payments to Mr. Schulman's estate have ever exceeded $15,000, the government contends that the Texas garnishment is invalid.

The Court is not persuaded by this reasoning. In the Court's view, the govern-

---

**4.** The Court is not persuaded by the government's argument that *Romani*'s holding is

limited to real property.

ment is proposing a hypertechnical reading of Texas garnishment law that conflicts with common sense and the *Romani* court's intention to ameliorate the harsh consequences of the Insolvency Statute under circumstances where a judgment creditor has taken the steps required by law to perfect its lien. In making this argument the government fails to recognize that KS Financial could not have known that none of the commission payments would ever exceed $15,000, nor does the government appear to recognize that it has conceded that KS Financial's "only hope for perfecting a lien on the insurance commissions is through garnishments." Government's Reply to KS Financial's Motion for Summary Judgment at 4. As the government concedes that KS Financial did all that it could do under Texas law to perfect its lien, its lien was therefore perfected in the sense that there is nothing more to be done to have a choate lien. *Romani*, 523 U.S. at ——, 118 S.Ct. at 1482. Accordingly, pursuant to the reasoning in *Romani*, the Insolvency Act does not rescue the government's unsecured claims in this case, and the Court finds that the claim of KS Financial is to be paid after the government's claims for the 1991 and 1992 unpaid taxes.

Finally, with regard to Mrs. Schulman's year's support claim, the Court notes that Mrs. Schulman concedes that this claim is subordinate to the government's claim for the 1991 and 1992 unpaid taxes, and that the government concedes that this claim is superior to its claims for the 1995 and 1996 unpaid taxes. Mrs. Schulman does not contend that her year's support claim is superior to KS Financial's default judgment, and the Court finds that this claim is subordinate to KS Financial's default judgment (as this judgment was obtained against Mr. and Mrs. Schulman individually.) Accordingly, any amounts she receives on her year's support claim must first be used to satisfy the government's claims for the 1991 and 1992 unpaid taxes, and then to satisfy KS Financial's default judgment.

## III. CONCLUSION

For the reasons stated above, the motion for summary judgment filed by third-party defendant United States of America [11–1] is GRANTED IN PART and DENIED IN PART, and the motion for summary judgment filed by plaintiff KS Financial Group, Inc. [22–1] is GRANTED. The Clerk is DIRECTED to close this case.

It is so ORDERED.