[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

—————————

No. 10-13514

—————————

D. C. Docket No. 6:08-cv-01853-GAP-GJK

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 15, 2011
JOHN LEY
CLERK

SIGNATURE PHARMACY, INC.,
a Florida corporation,
ROBERT STAN LOOMIS,
an individual,
KENNETH MICHAEL LOOMIS,
an individual,
NAOMI LOOMIS,
an individual, et al.,

Plaintiffs-Appellees,

versus

P. DAVID SOARES,
an individual,
CHRISTOPHER B. BAYNES,
an individual,
ALBANY COUNTY DISTRICT ATTORNEY'S OFFICE,
a political subdivision,

Defendants-Appellants.

—————————

Appeal from the United States District Court
for the Middle District of Florida

—————————

(November 15, 2011)

Before DUBINA, Chief Judge, HILL, Circuit Judge, and GOLDBERG,[*] Judge.

PER CURIAM:

Appellees Signature Pharmacy, Inc., et al. ("Signature")[1] filed suit against the Albany County District Attorney's Office ("Albany DA"); Albany County District Attorney, P. David Soares ("Soares"); Assistant Albany County District Attorney, Christopher P. Baynes ("Baynes"); Alex Wright ("Wright"), an officer with the Metropolitan Bureau of Investigation ("MBI"); the City of Orlando; and Mark Haskins ("Haskins"), an officer with the New York Bureau of Narcotics Enforcement ("NYBNE"). The claims arise from a raid of Signature's premises and the arrest of Signature's owners and employees in connection with an anabolic steroids investigation. This appeal addresses the claims against the Appellants Albany DA, Soares, and Baynes.

Appellees sued Soares and Baynes pursuant to 42 U.S.C. § 1983 on claims of unlawful arrest and unlawful conspiracy, and pursuant to Florida common law for intentional infliction of emotional distress ("IIED"). Appellees sued Soares and the Albany DA for injurious falsehood and defamation under Florida common

_____

[*]Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

[1]Signature is owned by Robert Stan Loomis, Naomi Loomis, and Kenneth Loomis. Kirk Calvert and Tony Palladino were Signature employees. We will refer to this group collectively as "Individual Appellees."

law.  Appellees also brought a § 1983 claim against the Albany DA pursuant to *Monell v. N.Y. City Dep't of Soc. Servs*., 436 U.S. 658, 98 S. Ct. 2018 (1978), alleging liability for the actions of its decision maker, Soares, for unlawfully arresting the Individual Appellees.  The Albany DA, Soares, and Baynes moved for summary judgment on all claims. The district court granted summary judgment as to the Florida IIED claim, but denied summary judgment as to all other claims.

Soares and Baynes appeal the district court's denial of summary judgment on the unlawful arrest claim and contend they are entitled to either absolute or qualified immunity against the claim.  Soares and Baynes also argue that the district court erred in denying summary judgment on the § 1983 conspiracy claim because the Appellees failed to allege an underlying constitutional violation. Finally, the Albany DA appeals the district court's denial of summary judgment on the § 1983 *Monell* claim.  After carefully reviewing the record and the parties' briefs and having the benefit of oral argument, we reverse the district court's denial of summary judgment on all claims.

I.

In 2005, the Drug Enforcement Agency ("DEA") and the Florida Office of Statewide Prosecutor Anne Wedge-McMillen asked the MBI to assist in an investigation of Signature, a pharmacy with two locations in central Florida.  MBI

3

agreed and Wright was assigned as the lead agent on the case. The investigation focused on potential violations of state and federal laws restricting the prescription and sale of anabolic steroids and human growth hormones.

Shortly after becoming the lead case agent, Wright attended a briefing on the case hosted by the DEA in Dallas, Texas, and was introduced to Baynes and Haskins. Wright, Baynes, and Haskins agreed to share information on Signature weekly as the investigation progressed. During this time Wright remained in contact with Baynes and Haskins on the progress of his investigation.

By summer of 2006, Wright and Wedge-McMillen had assembled a 144-page wiretap application and presented it to a Florida state court. The court approved the wiretap which permitted Wright to monitor Signature's phone and fax lines for 60 days. At the conclusion of the 60 days, Wright hosted a meeting at MBI's Orlando Office attended by Wedge-McMillen, Baynes, Haskins, and Albany County District Attorney David Soares, among others. It was the opinion of those at the meeting that there was evidence from the wiretap indicating that Signature was involved in the illegal sale of steroids and that it was shipping the steroids to New York. At the meeting, the parties present agreed that the case would be prosecuted separately in Florida and New York state courts. The plan was for Soares and Baynes to secure sealed indictments against the Individual

4

Appellees. Meanwhile, Wright was to secure search warrants for Signature's premises. Then, when Wright executed the search warrants, the indictments would be unsealed, and the Appellees would be arrested and transported to New York.

Following the summer meeting at MBI, Soares, Baynes, Haskins, and Wright began what the district court described as a "public relations campaign" with the purpose of "connect[ing] Signature to professional athletes who were allegedly taking steroids." The campaign included interviews with local newspapers in addition to Sports Illustrated and ESPN. The majority of the statements were allegedly made by Soares and Baynes, though Haskins and Wright are also alleged to have spoken with the media.

In December 2006 and January 2007, the grand jury in Albany County Court in Albany County, New York, returned its first indictment against the Individual Appellees. A week later, the grand jury returned a superceding indictment. There are several differences between the two documents: the second indictment dropped one count of criminal possession of a controlled substance, added one count of criminal diversion of prescriptions, and changed the insurance fraud count from second degree to third degree. The allegations contained in the two indictments, however, are materially the same.

On February 14, 2007, the New York state court issued warrants for the Individual Appellees on the grand jury's first indictment, rather than the superceding indictment. The reason for this is not contained in the record, but the parties speculate that it was because the court was somehow unaware of the superceding indictments. Sometime after securing the New York indictments and the arrest warrants and before the morning of February 27, 2007, Soares and Baynes left New York for Florida to participate in arresting the Individual Appellees.

On the evening of February 26, Wright secured three search warrants—one for each of Signature's locations and one for a separate location that housed some of Signature's computer servers. The following morning, on February 27, Wright, Baynes, Soares, Orlando police officers, and DEA agents executed the search warrants amid a sea of reporters and news crews. During the execution of the warrants, the Individual Appellees were arrested by Orlando police officers pursuant to Soares's and Baynes's direction that there were valid New York arrest warrants for the Appellees. Because Soares and Baynes neglected to bring copies of the New York arrest warrants, the Individual Appellees were not provided with copies of the warrants until days after the arrests, despite their repeated requests.

6

The New York criminal case against the Individual Appellees is ongoing. Florida elected not to prosecute. No administrative actions were ever taken against any of the licensed pharmacists who worked for Signature and they all remain licensed, though they have been unable to find work, allegedly due to the reputational fallout from the investigation and the press coverage.

As previously mentioned, Signature's claims in this case include § 1983 claims against Soares and Baynes for unlawful arrest and conspiracy and a §1983 *Monell* claim against the Albany DA. Soares and Baynes moved for summary judgment on the basis of absolute or qualified immunity and the Albany DA moved for summary judgment on the *Monell* claim. The district court denied both motions. Soares and Baynes appeal the district court's denial of immunity on the § 1983 claims and the Albany DA asks that this court accept pendant jurisdiction to hear its appeal of the district court's denial of summary judgment on the *Monell* claims.

## II.

A district court order denying a motion for summary judgment on the basis of immunity from suit is reviewed by this court *de novo*. *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together

7

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

III.

A.     Unlawful Arrest

The Appellees allege that Soares and Baynes violated their Fourth Amendment rights by or "commanding" and "directing" their warrantless arrest. At the heart of the claim is the allegation that Soares and Baynes instructed Wright to arrest the Individual Appellees based on deficient arrest warrants for the Appellees issued by a New York court. The Individual Appellees were arrested pursuant to Fla. Stat. § 941.14, which allows for warrantless arrests "upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by . . . imprisonment for a term exceeding one year." Soares and Baynes neglected to bring the New York warrants for the arrest of the Appellees with them when they traveled from New York to Florida to participate

8

in the raids. These warrants were based upon the original indictment in the New York case, which had been superceded by a second indictment.

Soares and Baynes argue that the district court erred in denying them prosecutorial immunity and qualified immunity against the unlawful arrest claim. The district court concluded that Soares and Baynes had no prosecutorial business in Florida, but that in directing the arrest of the Appellees, they were acting as Wright's "fellow investigative officers." The court noted that the only prosecutorial function Soares and Baynes "could have performed in Florida would have been to assist the Florida State Court in carrying out a demand from New York to extradite [the Appellees]—a task Soares and Baynes eschewed in favor of making quick and highly publicized arrests." The court concluded, "taking all reasonable inferences in favor of the Plaintiffs, Soares' and Baynes' activities on February 27, 2007 appear to have been focused in significant part on ensuring that [Appellees'] arrests and the raids would be covered by the media."

Absolute immunity depends on the function performed by the prosecutor and not the job title itself. *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). Thus the court examines "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 259, 113 S. Ct. 2606, 2608 (1993). Accordingly, absolute immunity applies to the

prosecutor's actions "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 995 (1976).

Even if a prosecutor is denied absolute immunity, a prosecutor may have qualified immunity when performing a function that is not associated with his role as an advocate for the state. *Jones*, 174 F.3d at 1281–82. The defense of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citation omitted). "[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). In evaluating claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a statutory or constitutional right; and (2) whether the right was "clearly established" at the time of the defendant's

10

misconduct. *Id*. at 1137. This two-pronged analysis may be done in whatever order is deemed most appropriate for the case. *Pearson v. Callahan*, 555 U.S. 223, 241, 129 S. Ct. 808, 821 (2009).

This court need not determine whether absolute immunity applies because we conclude from the record that the Appellees have failed to show the violation of a clearly established right. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (stating that officials are entitled to immunity for an unlawful arrest claim so long as there was probable cause or arguable probable cause for the arrest.). Here it is undisputed that neither Baynes nor Soares physically arrested anyone, but the allegations are that they directed the officers from the Orlando Police Department to do so based on pending charges in New York. Fla. Stat. § 941.14 directly authorized the arrest of the Appellees based on the New York felony charges.

The Appellees devote a substantial part of their briefs to, perhaps justifiably, complaining about Soares' and Baynes' bad behavior—noting that Soares and Baynes failed to bring the New York warrants (and that they were technically deficient), arguing that they were obsessed with the media attention and made defamatory remarks about the Appellees, and claiming they acted crudely on the flight from Florida to New York while escorting the Appellees back to New York

11

to face charges. Those claims, however, are not tied to the alleged constitutional deprivation.

The issue regarding the validity of the New York warrants and Soares's and Baynes's failure to bring them with them are not supportive of Appellees' claim. Regardless of whether the warrants in New York were valid, it is undisputed that there were pending felony charges against the Appellees in the state of New York. Fla. Stat. § 941.14 permits the warrantless arrest of individuals so long as there are pending felony charges against the person or persons arrested. There is no requirement under § 941.14 that there be valid arrest warrants in that state as well. Therefore, the uncontested fact that there were pending felony charges in New York, with or without the arrest warrants, would have provided a sufficient basis for the Appellees' arrest under Florida law.

Likewise, whether it was improper for Soares and Baynes to have been in Florida, involved in the execution of the search warrants, or to have made statements to the press is not germane to an unlawful arrest claim. The Appellees have not raised § 1983 claims for defamation, malicious prosecution, or illegal search or seizure against the Appellants. Accordingly this court need not discuss whether Soares's and Baynes's decisions to travel to Florida and plant themselves at the center of the media coverage of the raid is entitled to immunity protection.

The question is simply whether Soares and Baynes violated the Individual Appellees' clearly established rights by directing their arrest on pending felony charges. We conclude that they did not. The New York indictments provided probable cause for the Individual Appellees' arrests and therefore the district court erred in denying summary judgment to Soares and Baynes on the unlawful arrest claim.

B.    Unlawful Conspiracy

A § 1983 claim for conspiracy to violate constitutional rights requires showing that a conspiracy existed and it resulted in the actual denial of some underlying constitutional right. *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). Because Soares and Baynes did not deny Appellees their Fourth Amendment rights, there is no actionable wrong to support the conspiracy claim. Thus, Soares and Baynes are entitled to summary judgment on this claim as well.

C.    *Monell* Claim for Unlawful Arrest

Similarly, because we can discern no violation of the Appellees' Fourth Amendment rights to be free from unlawful arrest, we conclude that the *Monell* claim cannot stand. As pleaded, the claim asserts liability based exclusively on the alleged Fourth Amendment violations by Soares. Having found no such

13

violation, we reverse the judgment of the district court and conclude that summary judgment in favor of the Albany DA is proper as to this claim.

IV.

For the reasons stated, the judgment of the district court is reversed and the case is remanded for further proceedings in accordance with this opinion.

**REVERSED and REMANDED.**