Vivian FORMOSA, Plaintiff,

v.

MIAMI DADE COMMUNITY COLLEGE, a body corporate, Defendant.

No. 95–2781–CIV.

United States District Court, S.D. Florida.

Dec. 11, 1997.

---

G. Ware Cornell, Jr., Lauderdale, FL, for plaintiff.

Karen A. Brimmer, Miami, FL, Louise H. McMurray, for defendant.

## MEMORANDUM OPINION

MORENO, District Judge.

Vivian Formosa, a former secretary for Miami Dade Community College (the College), claims that she suffers from depression and that her employer discriminated against her because of this disability. The Plaintiff also alleges that the College retaliated against her for raising a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Because the College's proffered reasons for all of the alleged adverse employment decisions were unrelated to both the Plaintiff's disability and her EEOC filing, the Court grants summary judgment in favor of the Defendant.

## LEGAL STANDARD

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## BACKGROUND

Plaintiff Vivian Formosa was diagnosed with depression in 1972 and began working for the Defendant Miami Dade Community College as a Secretary in 1978. Although Formosa was excessively absent from work, she received satisfactory performance evaluations until 1991. Nevertheless, the College continued to employ her despite her absenteeism. The College may have required superior compliance with its attendance policy from secretaries but ignored this job requirement as it applied to the Plaintiff, either as an act of charity or because of the size of the College's workforce.

In early 1991, Formosa began working for Olga Garay in the College's Cultural Affairs Department. In early 1992, Formosa was transferred to another position, in which she worked for Kate Rawlinson, Olga Garay's

subordinate. Formosa claims that Garay and Rawlinson scrutinized her work more closely than that of other employees and brought enormous attention to all of her mistakes, including those that were extremely minor. Formosa claims that, as a result, she was terrified of coming to work, endured unbearable levels of stress, and, consequently, was increasingly absent from work.

Formosa presents evidence that almost immediately after she began working for Garay she complained to Dr. Joy Ruff in the College's Equal Employment Opportunity Office about the increased stress that working for Garay and Rawlinson caused her and that she was receiving medical treatment to help alleviate the stress. Beginning in 1991, Formosa also informed Bette Thompson, the College's Assistant Vice President of Human Resources, that she suffered from depression and that she was receiving medical treatment for the related psychological and psychiatric conditions. Since that time, Thompson maintained continual contact with the professionals providing Formosa mental health treatment.

From 1992–93, as before, Formosa was frequently absent from work. However, although the College had an explicit formal procedure for work absences, including emergency absences, Formosa frequently failed to promptly notify the College on the days that she was unable to appear for work. Formosa's treating psychiatrist, Dr. Cuervo, would later provide Formosa with notes addressed to her employer explaining the reason for her absences.

On October 26, 1993, Formosa took an extended leave of absence that was related to her depression. While she was away from work, Dr. Cuervo advised the College that, in his medical opinion, Formosa should work for a different supervisor because her current supervisors aggravated her stress. On November 23, 1993, Formosa returned to work, but the College once again assigned her to Garay's department. On April 24, 1994, Formosa took another extended medical leave of absence. While she was away on leave, Garay phoned her home and informed her that when she returned, she would be placed on probation. Formosa claims that this aggravated her depression and caused her to attempt suicide. Even after her suicide attempt, Garay forwarded her office mail to her home via certified letter with return receipt. Formosa claims that this also aggravated her mental health condition.

On July 18, 1994, Formosa received medical clearance to return to work. After the College informed her that she would have to work for Garay, Formosa filed a charge of discrimination with the Equal Employment Opportunity Commission. Within a month the College offered to transfer Formosa to work under a different supervisor, Dr. Bryant. Although Formosa accepted this position, and was scheduled to begin on August 23, 1997, Formosa did not appear on the required date. The day after she was scheduled to arrive, her husband telephonically informed the College that Formosa would not be able to begin working for two more weeks. On September 1, 1994, Dr. Cuervo sent a letter to the College in which he stated that Formosa could begin working on September 16, 1994 but that she could not return to her former department nor anywhere in the entire Wolfson campus (the downtown Community College branch where she had been working).

On September 15, 1994, Formosa began working for Dr. Marcia Fallon in the library. During the next seven months, her new supervisor observed poor work performance, including poor and slow typing, losing files, not being helpful to library patrons, excessively using the phone for personal calls, failing to comply with the College's procedures for absences, and working on another job while absent from her College employment. In March 1995 Formosa was suspended for five days and placed on thirty-day probation for not working late one day. Because Formosa missed work on most of these thirty days, the College extended Formosa's probation for an additional thirty days. On May 10, 1995, Formosa was discharged by the College. Formosa currently works for

Carnival Cruise lines and has missed one day of work with this new employer.

## AMERICANS WITH DISABILITIES ACT

■ In order to establish a *prima facie* case of discrimination under the Americans with Disabilities Act (the ADA), 42 U.S.C. § 12101, *et seq.*, Formosa must show that: (1) she has a disability; (2) she is a qualified individual; and (3) she was discriminated against because of the disability. *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1132 (11th Cir.1996), *amended*, 102 F.3d 1118 (11th Cir.1996). Disability is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(c) being regarded as having such impairment.

42 U.S.C. § 12102(2). Depression has been held to constitute a mental impairment. *Pritchard*, 92 F.3d at 1132. However, in order to constitute a disability under the ADA, the impairment (as suffered by the plaintiff in a particular case) must substantially limit a major life activity. *Id.*

■ Formosa claims that her severe depression substantially limits her ability to work because her depression is often so severe that she is unable to work, and she is unable to anticipate when her condition will increase in severity. In this case the claimed disability appears to affect the Plaintiff only when she works for one particular supervisor. A personality conflict with a superior does not establish a disability within the meaning of the disability law, *Stewart v. County of Brown*, 86 F.3d 107, 111 (7th Cir.1996), even if it produces depression as such conflicts often do.

However, because the ADA defines a disability as, *inter alia*, "being regarded as having such an impairment," and because the College placed Formosa on disability leave in October 1993, there is sufficient evidence that the College regarded her as being im-

paired and thus there is at least an issue of material fact as to whether Formosa was disabled or perceived as disabled under the ADA. *Id.* 92 F.3d at 1134 (citing 42 U.S.C. § 12102(2)).

■ In order to prevail, however, Formosa must also show that she was discriminated against because of her disability and that she was a qualified individual. *See* 42 U.S.C. § 12132. After Formosa left the position she held from 1978 through 1990, there is no indication that there was another position within the College for which an individual could be considered qualified despite repeated and sporadic absences from work. Formosa refers only to three positions for which she received "referrals" and for which she might have been qualified. However, the undisputed evidence is that these positions could not be filled by an individual who would frequently be absent from work. Since regular attendance was a requirement, Formosa cannot show that she was qualified for these available positions. Formosa also fails to establish that she was qualified for another position with the College because she has not demonstrated that she did or could comply with the College's mandatory procedures for reporting absences.

■ Assuming that Formosa was qualified, Formosa argues that she was not accommodated because the College refused to transfer her to a position outside of the downtown Wolfson Campus. However, Formosa expressed to her employer a strong preference to remain at the Wolfson Campus. The Court cannot conclude that the College failed to accommodate Formosa when it merely abided by her express employment preferences.

## RETALIATION

■ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case for retaliation, Plaintiff must show: (1) that she engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) that the adverse action was causally related to the plaintiff's protected activities. *Coutu v. Martin County Bd. of County Com'rs*, 47 F.3d 1068, 1074 (11th Cir.1995) (per curiam); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 920 (11th Cir.1993).

· The Plaintiff alleges that the College retaliated against her for filing a charge of discrimination with the EEOC. Formosa claims that she was transferred to a position in which her supervisor, Dr. Marcia Fallon, closely scrutinized her performance and falsely accused her of being a poor typist, failing to help library patrons, excessively using the telephone for personal calls, and eventually working on another job while being absent from her College employment. Based on this evidence, Formosa claims that she has shown that the adverse employment action was causally related to her filing of the charge of discrimination and that "it is not a big leap to conclude from the presented evidence that Formosa was set up to fail."

 Assuming that Formosa has stated a *prima facie* claim of retaliation, the College has proffered a nondiscriminatory reason for assigning her to the library position under Dr. Fallon and for terminating her based on poor performance. The College transferred Formosa based on her own request, and an employer may terminate an employee who is a poor typist, fails to help library patrons, excessively uses the telephone for personal calls, is excessively absent, and fails to follow the employer's absence policy. Therefore, the College has presented a legitimate decisive motivation—that is, a reason which, by itself, would have caused her dismissal. *See Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390 (11th Cir.1997).

■ Formosa thus must raise a genuine factual issue as to whether the College's proffered reason is a pretextual ruse to mask a retaliatory action. Formosa has not provided any direct evidence of retaliation, and has further offered no circumstantial evidence which would contradict the employer's proffered nondiscriminatory reasons. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). This Court requires more than a conclusory statement that it was not "a big leap that Formosa was set up to fail" to show pretext. Therefore Formosa's claim of retaliation must fail.

### *CONCLUSION*

The ADA provides that no employer shall discriminate against a qualified individual with a disability because of the disability. Formosa's depression did not affect a major life activity of working as she was able to perform depending on who was her superior. Even if Formosa had a disability, the College made as many accommodations as it reasonably could. Nevertheless, Formosa's job performance, particularly her absences, indicates that she was not qualified as a secretary for the College. Therefore, the Defendant's motion for summary judgment is GRANTED.