931 F.2d 1472
 19 U.S.P.Q.2d 1068
 CHANEL, INC., Plaintiff-Appellee,
v.
ITALIAN ACTIVEWEAR OF FLORIDA, INC., d/b/a Italian Designer
Labels, d/b/a Italian Fashion Distributors, Mervyn
Brody, Myron Greenberg, a/k/a Mike
Green, Defendants-Appellants.
 Nos. 90-5031, 90-5338.
 United States Court of Appeals,
Eleventh Circuit.
 May 24, 1991.
 
 Peter M. Feaman, Feaman, Adams, & Fernandez, Boca Raton, Fla., for Greenberg.
 Paul R. Marcus, Miami, Fla., for Italian Activewear.
 Jaye Quadrozzi and Sheri J. Engelken, Kirkland & Ellis, Chicago, Ill., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and DYER, Senior Circuit Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 In this trademark infringement case, the district court granted summary judgment for plaintiff-appellee Chanel, permanently enjoining further infringement and awarding treble damages and attorneys' fees against all three defendants-appellants. We agree there was no genuine issue of fact about appellant Italian Activewear's infringement of Chanel's trademark or about appellant Brody's personal liability for that infringement. That the infringement was intentional is unclear, however. And that appellant Greenberg should be held personally liable is also unclear. On these two issues we conclude genuine issues of fact remain. We therefore affirm in part, vacate in part, and remand for further proceedings.
 
 I.
 
 2
 Plaintiff-appellee Chanel, Inc. sells luxury items using registered, well-known trademarks. Defendant-appellant Italian Activewear was a Florida corporation selling imported goods under various labels, including Chanel.[1] Defendant-appellant Mervyn Brody was president and chief operating officer of Italian Activewear. Defendant-appellant Myron Greenberg is a friend and business associate of Brody. Although not an employee, Greenberg sometimes sold merchandise on behalf of Italian Activewear or Brody and would "keep an eye on things" at the store when Brody was out of town.
 
 
 3
 Italian Activewear, through Brody, imported and began marketing a shipment of handbags and belt buckles bearing Chanel trademarks. Brody purchased these goods from Sola, a European broker from whom Brody had earlier purchased other shipments of luxury items under various labels. Part of the shipment of Chanel-labeled goods was immediately resold to some California businessmen. Greenberg had originally introduced Brody to these Californians and was to receive a percentage payment for purchases from Brody they made. He received no percentage payment for these Chanel-labeled goods, however.
 
 
 4
 The Chanel-labeled goods purchased from Sola were counterfeit.[2] In addition to minor differences in physical construction, these handbags lacked several indicia of authenticity possessed by genuine Chanel bags: each authentic Chanel bag has a uniquely numbered sticker affixed to an inconspicuous location inside the bag and comes with a separate "certificate of authenticity" bearing the same number; and each bag is packaged inside a felt bag and then inside a "shiny black box," both of which also bear Chanel trademarks. Authentic Chanel belt buckles, moreover, are not sold without Chanel belts, as these were.
 
 
 5
 In his deposition testimony, Brody stated that he did not know where Sola got the bags and buckles and that he did not ask. He also said he was aware the bags should have had certificates of authenticity but that these bags did not. He said he had made efforts to ensure the goods were genuine (by comparing them with products he knew to be genuine). Brody's verification efforts were further attested to by one of his employees at the preliminary injunction hearing.
 
 
 6
 Chanel first acted in California, seizing the counterfeit goods held by the Californians who received part of the Sola shipment. The Californians informed Greenberg--who was "minding the store" at Italian Activewear while Brody was away--of the seizure. Greenberg sent Brody the following facsimile:
 
 
 7
 Att Merv. [Brody]
 
 
 8
 Big Trouble. Marshell (sic) & Chanel closed down Calif. Took bags and there will be lawsuit. They want to stop new shipments--and they are right. They know about this store and probably will be in here shortly. Trying to get your lawyer but I know he won't be able to do anything.
 
 
 9
 Call back right away.
 
 
 10
 Mike [Myron Greenberg]
 
 
 11
 He gathered up all the Chanel-labeled goods and removed them from the store, putting them in the trunk of a car which was then parked several blocks away.
 
 
 12
 Chanel sued Italian Activewear and Brody for trademark infringement in violation of 15 U.S.C.A. Sec. 1114(1)(a).[3] Greenberg was added as a defendant by later amendment. The district court granted plaintiff Chanel's motion for summary judgment in full, concluding as a matter of law not only that the trademark had been infringed, but also that the infringement had been intentional. It thus awarded the treble damages ($208,433.25) and attorneys' fees ($71,859.61) statutorily mandated in cases of intentional violation of 15 U.S.C.A. Sec. 1114(1)(a). See 15 U.S.C.A. Sec. 1117(b). The district court also concluded no genuine issue of fact existed about the personal liability of both Brody and Greenberg.
 
 II.
 
 13
 The Lanham Act prohibits, among other things, the use in commerce of a counterfeit trademark in a manner likely to cause confusion; and the Act further provides that anyone using a counterfeit trademark in such manner shall be liable in a civil action to the registrant of the trademark. See 15 U.S.C.A. Sec. 1114(1)(a). The remedies available to the registrant are set forth in 15 U.S.C.A. Sec. 1117. In addition to injunctive relief, a registrant whose rights are violated may generally recover the defendant's profits from the infringing activity (or its own damages or both) together with costs of the action. Based on equitable considerations, the trial court may, in its discretion, reduce or enhance the resulting award up to three times the original amount, and may, in exceptional cases, award attorneys' fees. 15 U.S.C.A. Sec. 1117(a). If the infringement is intentional, however, Sec. 1117(b) governs: unless the court finds extenuating circumstances, treble damages and attorneys' fees are mandated. 15 U.S.C.A. Sec. 1117(b).
 
 
 14
 The interplay of these provisions demonstrates that a showing of intent or bad faith is unnecessary to establish a violation of Sec. 1114(1)(a), or to seek remedies pursuant to Sec. 1117(a).[4] But where, as here, a registrant seeks the mandatory treble damages and attorneys' fees provided for in Sec. 1117(b), the plaintiff must prove the defendants' intent to infringe.
 
 III.
 
 15
 Appellee Chanel sought--and received by summary judgment--treble damages and attorneys' fees under 15 U.S.C.A. Sec. 1117(b). Thus, the district court necessarily perceived no genuine issue of fact regarding the knowledge and intent of appellants. We disagree. As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial. See Morissette v. United States, 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952); United States v. Gregory, 730 F.2d 692, 702 (11th Cir.1984). And we see no reason to except this case from the general rule.
 
 
 16
 The district court's grant of summary judgment on this issue rested chiefly on two undisputed facts: (1) the counterfeit goods lacked all indicia of authenticity, and Brody knew that indicia of authenticity generally accompanied genuine Chanel products; and (2) Brody knew Sola was not an authorized distributor of Chanel products, yet failed to ask Sola the origin of his Chanel-labeled products. Based on these facts, the court concluded Brody had been willfully blind, and "[w]illful blindness is knowledge enough." See Louis Vuitton S.A. v. Lee, 875 F.2d 584, 590 (7th Cir.1989). We accept this dicta from the Seventh Circuit: willful blindness could provide the requisite intent or bad faith. But whether a defendant has been willfully blind will depend on the circumstances[5] and, like intent itself, will generally be a question of fact for the factfinder after trial. The undisputed facts relied on by the district court could certainly support an inference of knowledge or willful blindness. But they do not so clearly compel that conclusion as to warrant finding intent as a matter of law.[6]
 
 
 17
 Chanel calls our attention to several other occurrences it feels bolster its position. First, it points out Brody has been involved in trademark infringement litigation twice in the past (in the mid-1980's). Second, it points to Greenberg's actions after hearing of the seizure of Chanel-labeled goods in California: he sent a warning fax to Brody; and then removed all Chanel-labeled merchandise from the premises, putting it in the trunk of a car. But these additional facts are, at best, simply further circumstantial evidence strengthening the inference of knowledge or intent. That these facts do even this is uncertain; for they could cut both ways. Looking at the facts in the light most favorable to Brody and Greenberg as non-moving parties, see Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir.1987), Brody's past experiences with trademark infringement laws might in fact make his evidence of attempted verification of authenticity more believable. Greenberg's pointed-to actions all occurred after the infringing activities; and all are consistent with the possibility that he first heard about the infringement from the Californians after the raid and was simply taking actions to stop the infringing activities and minimize the damage.
 
 
 18
 Chanel further suggests summary judgment was proper because, in response to its lengthy and well-documented motion, appellants filed only three pages of argument and one affidavit from Brody. Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact. See Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir.1978). But--particularly where, as here, the moving party is also the party with the burden of proof on the issue--it is important to remember the non-moving party must produce its significant, probative evidence only after the movant has satisfied its burden of demonstrating there is no genuine dispute on any material fact. See Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir.1991); cf. American Viking Contractors, Inc. v. Scribner Equip. Co., 745 F.2d 1365, 1369 (11th Cir.1984). And, as previously noted, there is no genuine dispute only if a reasonable jury could not return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Chanel's evidence does not demonstrate lack of a genuine dispute on intent; so appellants did not have to present the significant, probative evidence Ferguson requires.[7]
 
 IV.
 
 19
 Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act. See Mead Johnson & Co. v. Baby's Formula Serv., Inc., 402 F.2d 19 (5th Cir.1968); 15 U.S.C.A. Secs. 1114 & 1127. Because of its very nature a corporation can act only through individuals. "Obviously ... if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done." Mead Johnson, 402 F.2d at 23. If an individual actively and knowingly caused the infringement, he is personally liable. See id.; see also Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co., 655 F.2d 984, 990 (9th Cir.1981) (in analogous patent infringement context, individual will be liable if he is "moving, active, conscious force" behind infringement).
 
 
 20
 Applying this standard to Brody, we agree no genuine issue exists on his personal liability. Brody was the president and chief executive officer of Italian Activewear. It was he who purchased the counterfeit goods from Sola; he who advertised the goods as Chanel products in local publications; and he who operated the showroom from which the goods were sold.
 
 
 21
 The link between Greenberg and the infringing activities is far more tenuous, however. No evidence connects him to the purchase or promotion of the counterfeit goods. Greenberg did look after the showroom when Brody was out of town and, in that capacity, may have sold some of the counterfeit merchandise.[8] Chanel also points to Greenberg's introduction of Brody to the Californians (who later purchased counterfeit Chanel items from or through Italian Activewear) as further evidence of his involvement and to his warning fax and removal of the infringing goods as further evidence of his knowledge. Taken together, these facts may be enough from which to infer that Greenberg actively caused the infringement. But they are insufficient to establish an absence of genuine dispute, such that no reasonable jury could conclude he did not actively cause the infringement. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510.
 
 
 22
 The district court's order granting summary judgment mentions appellant Greenberg only once, in the last sentence of discussion: "Additionally, the court finds that Myron Greenberg, as an agent of Italian Activewear, is liable to the Plaintiff." Greenberg is only liable, however, if he actively caused the infringement as a moving, conscious force; and whether he actively caused the infringement as a moving, conscious force is--given the weak record in this case--a question of fact for the factfinder after trial.
 
 V.
 
 23
 For these reasons, we affirm the district court's summary conclusions that Italian Activewear infringed Chanel's trademark and that Brody is liable for that infringement. We vacate the grant of summary judgment on the issues of intent and of Greenberg's personal liability, however. On remand, Chanel may either seek damages against Italian Activewear and Brody under 15 U.S.C.A. Sec. 1117(a), or proceed to trial on the remaining issues.
 
 
 24
 AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.
 
 
 
 [1]
 The past tense is used because Italian Activewear is no longer in business
 
 
 [2]
 Appellants still dispute the goods' lack of authenticity. By affidavits as well as oral testimony at the preliminary injunction hearing, however, appellee established numerous physical discrepancies between the Sola goods and genuine Chanel products. In the face of this evidence, appellants have only Brody's unsupported assertion that these bags and buckles are (or may be) "grey market goods"--trademark-bearing goods that are imported without the consent of the trademark holder, but are, nonetheless, authentic. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 285, 108 S.Ct. 1811, 1814, 100 L.Ed.2d 313 (1988). This speculation is not the kind of significant, probative evidence necessary to withstand summary decision on this issue. See Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111 (5th Cir.1978). We therefore agree with the district court finding and conclusion that the goods were in fact counterfeit
 
 
 [3]
 Chanel also claimed defendants engaged in unfair competition in violation of 15 U.S.C.A. Sec. 1125(a). For our purposes, the same facts support a cause of action for unfair competition as for trademark infringement; if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 981 (11th Cir.1983). Further, the remedies provided for in 15 U.S.C.A. Sec. 1117 are equally available in actions brought under 15 U.S.C.A. Sec. 1114 (trademark infringement) or Sec. 1125(a) (unfair competition). See Rickard v. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir.1984). We will, therefore, discuss only the trademark infringement claim; but our discussion applies equally to Chanel's unfair competition cause of action
 
 
 [4]
 Although intent is not an essential element of a trademark infringement cause of action, it is a relevant consideration in evaluating whether the infringing use is likely to cause confusion. See Original Appalachian Artworks, Inc. v. The Toy Loft, 684 F.2d 821, 831-32 (11th Cir.1982); Sun-Fun Prods., Inc. v. Suntan Research & Dev. Inc., 656 F.2d 186, 190 (5th Cir. Unit B 1981). And, of course, a defendant's intent would be an equitable factor for the court to consider in enhancing or reducing an award under Sec. 1117(a)
 
 
 [5]
 In Lee, for example, the defendants had purchased obviously poorly crafted goods from an itinerant peddler at bargain-basement prices. 875 F.2d at 590
 
 
 [6]
 Such a conclusion would be warranted, of course, only if a reasonable jury could certainly not reach a contrary conclusion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)
 The relied-on facts relate to Brody's awarenesses and Brody's failure to act on those awarenesses; thus, as circumstantial evidence of Greenberg's intent these facts are even weaker. Because we hold the relied-on facts are not sufficient to establish Brody's intent as a matter of law, we also hold Greenberg's intent is not conclusively established.
 
 
 [7]
 Our conclusion that appellants' intent was not a proper subject for summary judgment is further confirmed by a brief look at other trademark infringement cases in which intent has been found. In Louis Vuitton S.A. v. Lee, for example, the "willful blindness" case discussed briefly above, the defendant had actually conceded knowledge in a pretrial stipulation. 875 F.2d 584 (7th Cir.1989). And in Louis Vuitton S.A. v. Spencer Handbags Corp., plaintiffs had a videotape of defendants bragging to a potential associate about their trademark infringement activities. 765 F.2d 966 (2d Cir.1985). Intent was based on more circumstantial evidence (like that present in this case) in Polo Fashions, Inc. v. Rabanne, 661 F.Supp. 89 (S.D.Fla.1986), and Vuitton et Fils, S.A. v. Crown Handbags, 492 F.Supp. 1071 (S.D.N.Y.1979), aff'd without opinion, 622 F.2d 577 (2d Cir.1980); but the findings of intent in these cases were made only after full bench trials, see Rabanne, 661 F.Supp. at 99; Crown Handbags, 492 F.Supp. at 1072. See also Finity Sportswear v. Airnit, Inc., 631 F.Supp. 769 (S.D.N.Y.1985) (knowledge or intent to infringe not appropriate subject of summary judgement). But see Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd., 642 F.Supp. 1143 (S.D.N.Y.1986) (summary judgment on willfulness granted where defendant admitted in deposition that he told retail merchants to whom he sold products that the products were "imitations," but that retail merchants' customers would likely think they were buying genuine Fendi products)
 
 
 [8]
 Merely selling the items cannot turn Greenberg into a moving, active, conscious force who caused the infringement; if it did, the entire sales force of infringing companies would be personally liable. The individual liability standard does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur