SYMANTEC CORPORATION, a Delaware corporation; and Quarterdeck Corporation, a Delaware corporation, Plaintiffs,

v.

CD MICRO, INC., an Oregon Corporation; and Vincent L. Webb, an individual, Defendants.

CD Micro, Inc., an Oregon Corporation; and Vincent L. Webb, an individual, Counter Claim Plaintiffs,

v.

Symantec Corporation, a Delaware Corporation; and Quarterdeck Corporation, a Corporation of Delaware, Counter Claim Defendants.

CD Micro, Inc., an Oregon Corporation; and Vincent L. Webb, an individual, Cross Claim Plaintiffs,

v.

Warner–Elektra–Atlantic Corporation, a corporation having a principal place of business in New York, NY; MRT, a corporation having a principal place of business in the City of Industry, CA; Ritek Global Media, a corporation having a principal place of business in the City of Industry, CA; Optimax, a corporation having a principal place of business in Walnut, CA; Ritek Global Media/MRT, a corporation having a principal place of business in the City of Industry, CA; and Imation, a corporation having a principal place of business in Oakdale, MN., Stargate Software, Inc., a corporation having a principal place of business in

Huntington Valley, PA; Unik Associates, LLC, a limited liability corporation having a principal place of business in Wauwatosa, WI; Alchemy Computer, Inc., a corporation, dba: Global Online Deals 4 All, and Perfection.Com, Inc., a corporation, dba: Global Online Deals 4 All, both having a principal place of business in Murfreesboro, TN.; Disc Copy Labs, a corporation; PC Lab, a corporation; PC Tech, a corporation, Chris Fain an individual, Gordon Dillard an individual and Mike Golden an individual, Cross Claim Defendants.

Civil No. 02–406–KI.

United States District Court,
D. Oregon.

Sept. 19, 2003.

Stephen S. Ford, Marger Johnson & McCollom, P.C., Portland, OR and Lawrence K. Rockwell, Eric W. Doney, William R. Hill, Julie E. Hofer, Donahue, Gallagher, Woods & Wood, LLP, Oakland, CA, for Plaintiffs Symantec Corporation and Quarterdeck Corporation.

John T. Carr, Carr Law Offices, Lake Oswego, OR, Don B. Finkelstein, Torrance, CA, for Defendants, Counter Claimants and Cross Complainants CD Micro and Vincent L. Webb.

Robert A. Graham, Jr., Grants Pass, OR, for Defendant Chris Fain.

Gordon Dillard, Grants Pass, OR, Pro Se Defendant.

## OPINION

KING, District Judge.

On July 8, 2003, I granted in part Symantec Corporation's and Quarterdeck Corporation's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment (# 145). I held that CD Micro, Inc., was liable for copyright infringement, trademark infringement, unfair competition under the Lanham Act, and trademark counterfeiting. I also held that Vincent Webb was vicariously liable for copyright infringement but denied summary judgment for a finding of vicarious liability against Webb for trademark infringement. I then allowed defendants to file a late response to Symantec/Quarterdeck's motion for summary judgment on damages. My analysis follows.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.), *cert. denied*, 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## DISCUSSION

I. *Trademark Damages*

■ When a violation of any right of the registrant of a mark . . . shall have been

established in any civil action ... the plaintiff shall be entitled, ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). Unless the court finds extenuating circumstances, it shall enter treble damages, together with reasonable attorney fees, for trademark counterfeiting that consists of intentionally using a mark knowing the mark is a counterfeit mark. *Id.* at § 1117(b).

Symantec/Quarterdeck offer alternative methods for computing the size of the award: (1) Symantec/Quarterdeck's lost profits in the amount of $7,214,290; or (2) a disgorgement of CD Micro's profits in the amount of $3,334,535. The statute gives me the discretion to consider the equities and circumstances of the case. After doing so, I conclude that a just award is one based on requiring CD Micro to disgorge its profits.

Defendants submitted declarations of three experts, Mark Lee, Christopher Horgan, and Steve Daniel, to support defendants' argument that some of the disks sold by CD Micro were manufactured by authorized Symantec replicators. The three defense experts all have experience in the software manufacturing field but none of them have personal knowledge of the current manufacturing techniques of the authorized Symantec replicators.[1] After a physical examination of the CDs and markings contained on them, the defense experts conclude that seven of fifteen disks they examined were manufactured by authorized Symantec replicators. Defendants then argue that the profit calculations are excessive because many of the disks sold by CD Micro or still retained in its inventory were authorized.

Symantec/Quarterdeck offers a declaration by Allan Chang, the Production Manager since 1996 at Ritek Global Media/MRT ("Ritek"), one of the authorized Symantec replicators. Chang examined five of the CDs which the defense experts concluded were manufactured by Ritek. Chang states that Ritek did not manufacture any of the five CDs because they are either missing an IFPI number on the inner mirror band or have an IFPI number which Ritek never used.

Although defendants may argue that they have raised an issue of fact concerning the manufacturer of the CDs, I disagree. None of the defense experts laid a foundation for any personal knowledge about the current Ritek manufacturing process. Chang, as the Production Manager at Ritek when the CDs would have been manufactured, has this knowledge. He would know what IFPI numbers Ritek uses and whether it uses them on all CDs manufactured. Thus, Chang does not dispute the statements of the defense experts in a way leading to a conclusion that the jury must decide the issue. Rather, Chang has pointed out the lack of personal

---

1. Lee did work for the parent company of Ritek Global Media, Inc., from 1990 until 1995, years before infringement began in this case. Thus, his knowledge is extremely dated, particularly in the software field.

knowledge the defense experts have on this specific topic, even though they may be very knowledgeable about software manufacturing in general. Consequently, I find as a matter of law that Symantec/Quarterdeck has proven for purposes of the damages calculation that CD Micro sold 231,100 infringing copies of software.

Defendants raise no other arguments about the calculations of CD Micro's profits to be disgorged. Accordingly, I find that the base damage amount is $3,334,535.

The next issue is Symantec/Quarterdeck's request that I treble the damages under the statute. I previously found CD Micro liable for trademark counterfeiting. Unless the court finds extenuating circumstances, it shall enter treble damages, together with reasonable attorney fees, for trademark counterfeiting that consists of intentionally using a mark knowing the mark is a counterfeit mark. 15 U.S.C. § 1117(b).

Symantec/Quarterdeck argue that defendants exhibited, at a minimum, a willful blindness to the authenticity of the software. Defendants knew that the software was priced very low, that some of the disks had typographical errors on the labels, and that the software was without packaging or manuals. Beginning by December 2001 and continuing for at least several months, CD Micro received many e-mails from dissatisfied customers complaining that the Symantec software they purchased from CD Micro was pirated and demanding their money back. Numerous shareholders witnessed a discussion at the CD Micro shareholder's meeting in December 2001 in which Chris Fain stated his concern that the Symantec software was pirated because the price advertised by CD Micro was so low. In response, Webb told Fain that CD Micro had authority from Symantec to sell the software at those prices.[2] Although CD Micro denies that it received earlier letters sent by Symantec, it did receive the letter of March 8, 2002, quickly responded that it was not knowingly selling counterfeit software, and sent a sample for inspection. Symantec soon informed CD Micro that the sample disk was counterfeit. Webb states in his declaration that he then reexamined a copy of the disk sent to Symantec and contacted Optimax, the manufacturer whose name was stamped on the disk. Optimax told Webb that it manufactured Symantec products. Optimax did not examine a sample from CD Micro to determine if it had manufactured this disk or, instead, if an unauthorized manufacturer copied Optimax's name onto the CD. Based on this, Webb concluded that Symantec was wrong that the sample he sent to it was counterfeit.

Webb approved the price of all purchase orders for the software and states that he is the primary software buyer for CD Micro. Webb personally inspected the physical disks if they were obtained from sources other than the software publisher or were not in a product packaged for retail. He alone made the decision on whether the software was legitimate and should be purchased by CD Micro.

Some circuits have held that "willful blindness" is knowledge enough to meet the requirements of the statute. *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989) (willful blindness established in spite of a shopkeeper's later disavowal of a stipulation that she knowingly sold counterfeit merchandise because shopkeeper must have known that the expensive brand-name goods were unlikely to display poor workmanship and cheap materials or

---

**2.** At the oral argument, defense counsel argued that the facts in the declarations were not accurate and that Webb may have been deposed on the topic. There is no evidence filed with the court, however, which disputes the facts as stated by the declarants.

be sold by itinerant peddlers at bargain-basement prices); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir.1991). The individual in *Chanel:* (1) knew the counterfeit goods lacked the indicia of authenticity that generally accompanied the genuine goods; and (2) knew that the broker who provided the counterfeit goods was not an authorized distributor but did not ask about the origin of the goods. The individual had also been involved in two earlier trademark infringement actions. The court reversed a summary judgment ruling for treble damages based on a determination that the infringement was with knowledge. The court agreed that the facts could lead to a strong inference of knowledge or willful blindness but not clearly enough to compel the conclusion as a matter of law, in light of the general rule that a party's state of mind is a question of fact for the factfinder. *Id.* at 1476.

In declarations filed with this court, Webb touted his vast, long-term knowledge of the software manufacturing industry. He is not a naive user who accidently began to use a trademarked phrase or symbol. Webb made all decisions on the purchase of the counterfeit software disks. He was warned by users and shareholders that the software was counterfeit but did not stop selling it. Webb admits that he never contacted Symantec to ascertain whether the disks were legitimate. When Symantec contacted Webb with the news, he still refused to believe it and continued to sell the disks. Even though this is a question of intent, I conclude that there is no factual issue raised. A reasonable jury would have to conclude that Webb intentionally sold software bearing counterfeit trademarks. Accordingly, I award treble damages on the base damage amount of $3,334,535, for an award of $10,003,605.

## II. *Copyright Damages*

A copyright owner is entitled to recover actual damages suffered as a result of the infringement and any profits of the infringer that are attributable to the infringement. 17 U.S.C. § 504(b). At any time before final judgment is rendered, the copyright owner may elect to recover an award of statutory damages instead of actual damages and profits. *Id.* at § 504(c)(1).

 Copyright infringement and trademark infringement are two different wrongs which can at times be committed by a single act. The court may award statutory damages for copyright infringement and actual damages, possibly trebled, for trademark infringement. This is not considered a double recovery. *Nintendo of America, Inc. v. Dragon Pacific International*, 40 F.3d 1007, 1011 (9th Cir.1994), *cert. denied*, 515 U.S. 1107, 115 S.Ct. 2256, 132 L.Ed.2d 263 (1995).

Actual damages for copyright infringement are identical to those calculated for trademark infringement: $3,334,535.

I ask Symantec/Quarterdeck to elect within 21 days the type of copyright damages that they wish to receive.

## III. *Personal Liability of Webb*

Webb raises a late argument that there is a factual issue on whether he is vicariously liable for copyright infringement. His arguments are not persuasive. Moreover, I have already held as a matter of law that he is vicariously liable and decline to address the issue further.

Symantec/Quarterdeck raises the issue of Webb's personal liability for trademark infringement as a contributory infringer and provide additional authority for their argument.

Contributory trademark infringement applies if a defendant: (1) intentionally induces another to infringe on a trademark; or (2) continues to supply a product knowing that the recipient is using the product to engage in trademark infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.1996). *Fonovisa* approved the Seventh Circuit's application of the willful blindness test for contributory trademark infringement. *Id.* at 265.

For the reasons stated when I decided to award treble damages, I find that there is no factual issue that Webb intentionally infringed the trademark and continued to supply the counterfeit software. I grant summary judgment that Webb is personally liable for contributory trademark infringement.

## CONCLUSION

I grant summary judgment on the deferred issues from Symantec Corporation's and Quarterdeck Corporation's Motion for Summary Judgment or, in the alternative, Partial Summary Judgment (# 145), as discussed above. I also bifurcate the indemnity issue raised by defendants' cross claim. Symantec/Quarterdeck may move for entry of a Fed.R.Civ.P. 54(b) partial judgment, and submit a proposed permanent injunction, within 21 days. I ask defendants to consider what will be required to prepare for and try the indemnity issue. In the near future, I will hold a phone conference with defendants and cross claim defendants for scheduling purposes.