Charles **SCHVANEVELDT**, Casey **Quinn, and Lance Quinn, as Trustees of the Casey Quinn Living Trust, Plaintiffs,**

v.

**MASTEC NORTH AMERICA, INC., Defendant.**

No. 02–21787–CIV

United States District Court, S.D. Florida. Miami Division.

Feb. 18, 2004.

Curtis Carlson, Esq., Payton & Carlson, P.A., Miami, FL, Counsel for Plaintiff.

Steve I. Silverman, Esq., Michael T. Landen, Esq., Kluger, Peretz, Kaplan & Berlin, P.L., Miami, FL, Counsel for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT III OF PLAINTIFFS' COMPLAINT AND PARTIAL SUMMARY JUDGMENT AS TO COUNT IV OF PLAINTIFFS' COMPLAINT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment as to Count III of Plaintiffs' Complaint and Partial Summary Judgment as to Count IV of Plaintiffs' Complaint, filed January 5, 2004. On January 26, 2004, Plaintiffs filed their Response. On February 5, 2004, Defendant filed its Reply.

The following facts are not in dispute. This case arose out of a contract dispute between the parties. Plaintiffs are the former owners of Upper Valley Utilities Corp. ("Upper Valley"). On May 26, 2000, Defendant purchased all of the stock of Upper Valley from Plaintiffs. On that date, the parties entered into a Stock Purchase Agreement ("Agreement"), whereby Plaintiffs received half the purchase price in cash and the other half in the form of Defendant's stock.

Section 1.2(d) of the Agreement treats Defendant's stock as follows:

"(d) Any MasTec common stock received by Sellers under this Agreement will be subject to the following restrictions on transfer, in addition to any restrictions set forth in Section 6.9 and to applicable Laws (as defined in Section 2.2):(I) one-hundred percent (100%) of the MasTec Common Stock ("the Unrestricted Stock") will be immediately saleable upon receipt from Buyer, subject to coordination of the sale with Buyer."

Section 6.9 of the Agreement adds the following restrictions:

"(b) Sellers understand and agree that:

(I) MasTec is not under any further obligation to register the sale, transfer or other disposition by Sellers of the MasTec common stock issued to Sellers pursuant to this Agreement or to take any action necessary in order to make an exemption from registration available.

(ii) Stop transfer instructions will be given to the transfer agent of the MasTec Common Stock issued to Sellers pursuant to this agreement and a legend will be placed on the certificates representing the MasTec Common Stock, or any certificates delivered in substitution or exchange therefor, stating in substance:

"The securities represented by this certificate were issued in a transaction to which Rule 145 under the Securities Act of 1933 (the "Act") applies. The securities represented by this certificate

may only be transferred in accordance with Rule 145(d) or an effective registration statement or exemption from registration under the Act."

. . .

(c) MasTec agrees that the stop transfer instructions and legends referred to in paragraph (b) above will be terminated or removed if Sellers deliver to MasTec evidence reasonably satisfactory to MasTec that the instructions and legends are not required under the Act. Following presentation of documentation reasonably satisfactory to MasTec's counsel that the MasTec common stock received by Sellers has been sold in conformity with the provisions of Rule 145(d), MasTec's counsel will issue an opinion authorizing the termination of the stop transfer instructions and the removal of the legends referred to in paragraph (b) above."

In June of 2000, Plaintiffs attempted to sell their shares in Defendant's stock. However, Plaintiffs were advised by their brokers that they could not sell the stock because Defendant had imposed restrictive legends upon it. In March of 2001, Plaintiff Schvaneveldt executed a "Seller's Representation Letter for Sale of Restricted or Control Securities Under Rule 145" and sold his stock. Plaintiffs' broker requested that Defendant lift the restrictions on Schvaneveldt's stock and withheld the proceeds of the sale until Defendant did so. On June 13, 2001, Defendant lifted the restrictions on Schvaneveldt's stock. On August 1, 2002, Plaintiff Quinn executed his own "Seller's Representation Letter," and on August 6, 2002, Defendant lifted the restrictions on Quinn's stock. To date, Quinn has not sold his shares.

On December 6, 2002, Plaintiffs filed their Amended Complaint, which includes five (5) counts. Counts I, II, III and V allege breach of contract, and Count IV alleges breach of the implied covenant of good faith and fair dealing, citing the same conduct alleged in Counts I, II and III. In its current Motion, Defendant seeks summary judgment as to Count III, which alleges that Defendant wrongfully failed to lift restrictions on Defendant's stock owned by Plaintiffs and thus prevented its sale. Defendant also seeks partial summary judgment as to Count IV, to the extent that Count IV arose out of the conduct alleged in Count III.

In support of its Motion, Defendant argues that it lifted the restrictions on Plaintiffs' stock immediately upon receiving evidence from Plaintiffs that the restrictions were no longer required. In their Response, Plaintiffs argue that (1) the restrictions were not included in the Agreement, (2) even if the restrictions were included in the Agreement, Defendant knew at the time the Agreement was signed that the restrictions were not required, and (3) Plaintiff Schvaneveldt provided documentary proof to Defendant in March of 2001 that the restrictions were no longer required, but Defendant did not lift the restrictions on Schvaneveldt's stock until June 13, 2001.

## LEGAL STANDARD

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Id.* To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 919. A mere scintilla of evidence in support of the non-moving party's position is insufficient, however, to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Id.* at 249–50, 106 S.Ct. 2505.

## DISCUSSION

A. *The contract between the parties included restrictions on Plaintiffs' sale of Defendant's stock.*

As noted above, Section 1.2(d) of the Agreement states as follows:

> "(d) Any MasTec common stock received by Sellers under this Agreement will be subject to the following restrictions on transfer, in addition to any restrictions set forth in Section 6.9 and to applicable Laws (as defined in Section 2.2):(I) one-hundred percent (100%) of the MasTec Common Stock ("the Unrestricted Stock") will be immediately sa-

leable upon receipt from Buyer, subject to coordination of the sale with Buyer."

■ Plaintiffs argue that Section 1.2(d) permitted the immediate and unrestricted sale of the stock Plaintiffs received from Defendant. Plaintiffs assert that the relevant language of Section 1.2(d) is ambiguous and that the only way to give effect to all of its language is to allow immediate and unrestricted sale. The Court has some difficulty following Plaintiffs' assertion and argument since Section 1.2(d) clearly states that the "immediately saleable" provision is *"in addition to* any restrictions set forth in Section 6.9" (emphasis added). This is tantamount to saying that there were no restrictions *other than* those set forth in Section 6.9. This is readily understandable, unambiguous language that clearly states the intent of the parties. Moreover, to hold that no restrictions applied would give too much effect to the "immediately saleable" provision and no effect to the "in addition to . . ." provision. Conversely, to hold that the restrictions set forth in Section 6.9 were the *only* applicable restrictions would give effect to all of the relevant language. Lastly, Plaintiffs do not deny that the stock would have been immediately saleable had Plaintiffs promptly complied with the provisions of Section 6.9. Therefore, the Court finds that the restrictions set forth in Section 6.9 of the Agreement applied to Plaintiffs' stock.

B. *It is irrelevant whether Defendant knew that the restrictions in Section 6.9 of the Agreement should have been lifted in June of 2000 because Plaintiffs failed to provide evidence to Defendant that the restrictions were no longer required.*

Section 6.9(b)(ii) of the Agreement states that the restrictions upon Plaintiffs' shares could not be lifted unless and until

Plaintiffs "transferred [their shares] in accordance with Rule 145(d) or [provided] an effective registration statement or exemption from registration under the [Securities] Act [of 1933]." Section 6.9(c) adds that the restrictions on Plaintiffs' sale of their stock "will be terminated or removed if Sellers deliver to MasTec evidence reasonably satisfactory to MasTec that the instructions and legends are not required under the Act." In addition, Section 6.9(b)(1) states that "MasTec is not under any further obligation to register the sale, transfer or other disposition by Sellers of the MasTec common stock issued to Sellers pursuant to this Agreement or to take any action necessary in order to make an exemption from registration available."

■ Plaintiffs argue that Defendant knew that their attempted sale of their stock in June of 2000 complied with the provisions of Rule 145(d) and thus knew that the restrictions contained in Section 6.9 should have been lifted at that time. But Plaintiffs' argument is flawed for two reasons. First, Plaintiffs fail to provide documentary proof of Defendant's knowledge. Instead, Plaintiffs claim that "the evidence at trial will demonstrate" as much. In the course of responding to a summary judgment motion, it is insufficient to state what the evidence at trial will demonstrate. Rather, a party must produce evidence to refute the factual claims contained in the motion for summary judgment. *Hairston*, 9 F.3d at 918. Plaintiffs have failed to do so.

■ Secondly, even if the Court assumes Plaintiffs' allegations to be true, Plaintiffs have failed to fulfill their obligations pursuant to the Agreement. Section 6.9(c) of the Agreement placed the burden upon Plaintiffs to provide evidence that would convince Defendant to lift the restrictions. However, Plaintiffs submit no proof that they provided any such evidence to Defendant at any time before June of 2001. Section 6.9(b)(I) states that Defendant had no independent duty with respect to lifting the restrictions on Plaintiffs' shares. Therefore, the Court finds that even if the restrictions were not required in June of 2000, Defendant did not breach the contract by leaving them in effect.

C. *Plaintiffs fail to produce evidence that Defendant was aware of Plaintiff Schvaneveldt's attempt to sell his stock in March of 2001.*

Plaintiffs argue that Plaintiff Schvaneveldt produced evidence to Defendant in March of 2001 that the restrictions against his shares were no longer required, but Defendant did not lift the restrictions until June 13, 2001. However, while Defendant has produced evidence that it first became aware of Schvaneveldt's actions on June 12, 2001, Plaintiffs have failed to produce any evidence that Defendant knew of Schvaneveldt's actions prior to that date. Thus, on the basis of the record, the Court concludes that Defendant became aware of Schvaneveldt's actions on June 12, 2001, at which point it promptly lifted the restrictions against Schvaneveldt's stock. Therefore, no breach of contract occurred.

Accordingly, the Court concludes that Defendant's actions with respect to the restrictions on Plaintiffs' stock did not violate the terms of the Agreement between the parties. Moreover, it follows that the same conduct did not constitute a breach of the implied covenant of good faith and fair dealing.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment as to Count III of Plaintiff's Complaint and Partial Summary Judgment as to Count IV of Plaintiff's Complaint be, and

the same is hereby, GRANTED. Count III of Plaintiffs' Complaint is DISMISSED in its entirety. Count IV of Plaintiffs' Complaint is DISMISSED to the extent it alleges the same conduct alleged in Count III. All other Counts in Plaintiffs' Complaint remain pending.