Helena DE SARO and New England Capital Investments, Plaintiffs,

v.

UNITED STATES of America and Drug Enforcement Administration, Defendants.

No. 02–23102–CIV.

United States District Court, S.D. Florida.

March 1, 2004.

---

Sharon Kegerreis, Esq., Mayda Prego, Esq., Hughes, Hubbard & Reed, LLP, Miami, FL, for Plaintiffs.

Alison W. Lehr, AUSA, United States Attorney's Office, Miami, FL, for Defendants.

### ORDER DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS NEW ENGLAND CAPITAL AS A PLAINTIFF, AND GRANTING SANCTIONS

JAMES LAWRENCE KING, Senior District Judge.

THIS CAUSE is before the Court upon Plaintiffs' Motion for Summary Judgment,[1] Plaintiffs' Motion to Dismiss New England Capital Investments ("New England Capital") as a Plaintiff in this Action,[2] and Defendants' Motion for an Order Compelling Plaintiffs to Designate and Produce a Rule 30(b)(6) Representative for Deposition,[3] all of which were filed on January 5, 2004.

The following facts are undisputed. This case arose out of Defendants' seizure of two original oil paintings.[4] Plaintiff Helena de Saro purchased the two paintings in 1989 and 1990. Ms. de Saro possesses the certificates of authenticity for the paintings and paid for their storage up until the time of their seizure in 2002. In 2001, Ms. de Saro met Mr. Jose Maria Clemente, who offered to help Ms. de Saro sell the paintings. Subsequently, New England Capital was formed to facilitate the transfer and sale of the paintings.

On March 14, 2002, Defendants seized the two paintings from a warehouse in New York City pursuant to a criminal investigation of Mr. Clemente. Defendants subsequently obtained an indictment against Mr. Clemente alleging drug dealing and money laundering.[5] The indictment, filed June 27, 2002, further alleges that Mr. Clemente owned the paintings and used them as part of a money laundering scheme to "... conceal and disguise the nature, location, source, ownership and control of the proceeds of a specified unlawful activity ...," namely, the concealing, buying and selling of controlled substances.

On May 3, 2002, Plaintiffs filed their Complaint, which alleges that the paintings belong solely to them. Plaintiffs filed their Complaint jointly and shared the same counsel.[6] Plaintiffs allege violations of their Fourth and Fifth Amendment rights and seek return of the paintings pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, which states that "a person aggrieved by an unlawful search and seizure or by the deprivation of

---

1. On January 26, 2004, Defendants filed their Response. On February 13, 2004, Plaintiffs filed their Reply.

2. On January 23, 2004, Defendants filed their Response. On February 13, 2004, Plaintiffs filed their Reply.

3. On January 23, 2004, Plaintiffs filed their Response. On February 2, 2004, Defendants filed their Reply.

4. According to Plaintiffs, the combined value of the two paintings, one by Francisco de Goya and the other by Tsuguharu Foujita, is approximately ten million dollars.

5. See *United States v. Clemente*, 02–20548–CR–MARTINEZ.

6. Throughout these proceedings, Plaintiffs have filed all submissions jointly and have continued to share counsel.

property may move...for the property's return."[7]

The parties concede that the principal issue before the Court is ownership of the paintings. In their Motion for Summary Judgment, Plaintiffs jointly argue that Ms. de Saro is the sole owner of the paintings. In accordance with this claim, Plaintiffs have now also filed their Motion to Dismiss New England Capital as a Plaintiff, on the grounds that New England Capital has never held any ownership interest in the paintings. Plaintiffs claim that New England Capital was formed to facilitate the transfer and sale of the paintings but has never held any ownership interest in the paintings. Conversely, Defendants allege that New England Capital owned the paintings at the time of their seizure, that New England Capital was the alter ego of Mr. Clemente, and therefore, the paintings were subject to forfeiture in the pending criminal case against Mr. Clemente.

## LEGAL STANDARD

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Id.* To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston,* 9 F.3d at 919. A mere scintilla of evidence in support of the non-moving party's position is insufficient, however, to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Id.* at 249–50, 106 S.Ct. 2505.

## DISCUSSION

A. *A genuine issue of fact exists because of Plaintiff New England Capital's failure to appear at a noticed deposition.*

■ On December 18, 2003, in an attempt to obtain evidence to prove Mr. Clemente's ownership interest in the paintings, Defendants noticed the deposition of New England Capital for December 30,

---

**7.** Although Mr. Clemente was indicted on June 27, 2002, he has not yet been tried. Mr. Clemente is presently in custody in Spain, and it not clear when he will be brought to the United States. After giving the Government ample time to try Mr. Clemente, the Court has moved forward with this civil proceeding.

2003. Defendants' Notice of Deposition asked New England Capital to designate a representative to answer questions pertaining to its corporate structure, its parties in interest and their respective shares, and other matters of interest to Defendants. Defendants' Notice further requested documents relevant to the issue of ownership of the paintings. However, no representative of New England Capital appeared at the deposition.

Instead, Plaintiffs sent Defendants a letter claiming that New England Capital "does not have a witness presently available to testify as to the matters you have identified." (Defs.' Mot. Ex. B). Plaintiffs added that Defendants would "invade the attorney client privilege" by using the deposition to obtain the testimony of New England Capital's attorney or to seek access to privileged documents. *Id.* Plaintiffs further attempt to explain this failure to appear by inviting the Court's attention to their Motion to Dismiss Co–Plaintiff New England Capital, now arguing that New England Capital never owned the paintings at all.

However, irrespective of whether New England Capital remains a Plaintiff, Plaintiffs' own words indicate that New England Capital possessed documents that might have shed light upon the issue of the paintings' ownership. Moreover, as Defendants assert in their Motion for an Order Compelling Plaintiffs to Designate and Produce a Rule 30(b)(6) Representative for Deposition, Plaintiffs' refusal to produce evidence in their possession regarding the nature of New England Capital entitles the Court to infer that the evidence would have been adverse to Plaintiffs' case.[8] Be-

cause Plaintiffs now claim that Ms. de Saro was at all relevant times the sole owner of the paintings,[9] the Court concludes that New England Capital's refusal to appear for a deposition and produce discovery subjects Plaintiffs to a reasonable inference that disclosure of discovery would indicate that New England Capital held at least some ownership interest in the paintings. Having refused discovery, New England Capital is barred from presenting witnesses or documentary evidence at trial regarding New England Capital's lack of ownership interest in the paintings.

B. *A genuine issue of fact exists because of discrepancies between Plaintiffs' earlier and more recently filed pleadings.*

█ Plaintiffs assert, without documentary proof, that New England Capital never held any ownership interest in the paintings. The Court cannot now simply accept Plaintiffs' bald assertion at face value. As set forth above, Plaintiffs have reversed their position with regard to New England Capital as this case has proceeded. Specifically, Plaintiffs' jointly filed Complaint alleged that both Ms. de Saro *and* New England Capital owned the paintings, while Plaintiffs' more recent pleadings contend that Ms. de Saro is and has always been the sole owner of the paintings.

The language of Plaintiffs' Complaint indicates that New England Capital held an ownership interest in the paintings. Paragraph 12 of the Complaint states, "once the paintings were sold, a substantial portion of the proceeds was to be remitted to Helena de Saro." The fact that Ms. de

---

8. *See United States v. Wilson,* 322 F.3d 353, 363–64 (5th Cir.2003); *United States v. Johnson,* 288 F.2d 40, 45 (5th Cir.1961).

9. Plaintiffs' claim clearly demonstrates a conflict of interest between the two Plaintiffs and raises questions concerning counsel's representation of two clients with apparent adverse interests.

Saro was to receive a substantial portion of the proceeds—as opposed to the entire proceeds—indicates some sort of joint ownership between Ms. de Saro and New England Capital. Paragraph 20 further indicates joint ownership, stating, "Defendant's seizure of the two paintings from Helena de Saro and New England Capital was unreasonable and without probable cause." Similarly, paragraph 25 states, "Defendants wrongfully deprived Plaintiffs of property without due process of law." Lastly, but perhaps most convincingly, paragraph 31 states, "Plaintiffs are the lawful owners of the two paintings and are entitled to their immediate return," which conclusively states the ownership interest to both Plaintiffs.

Conversely, Plaintiffs' current Motion to Dismiss New England Capital Investments as a Plaintiff in this Action takes the position that New England Capital had no ownership interest in the paintings. Plaintiffs' contradictory pleadings have created an issue of fact with regard to ownership of the paintings. Moreover, as noted above, all of the motions and pleadings in this case have been submitted on behalf of both Plaintiffs by the same law firm. This commingling of Plaintiffs, and indeed their treatment as a single legal entity, has created further confusion in attempting to resolve the ownership issue.

C. *A genuine issue of fact exists because Defendants have produced evidence indicating that New England Capital owned the paintings.*[10]

In addition to the issues of fact created by Plaintiffs' conduct and pleadings, Defendants have provided affirmative evidence of New England Capital's ownership interest in the paintings. Defendants have

produced Agreements of Sale for both paintings whereby Ms. de Saro sold the paintings to New England Capital. (Defs.' Mot. Ex. E, Items 1 and 5). Ms. de Saro contends that the Agreements never took effect, in spite of the fact that there is scant evidence of why Ms. de Saro's initials and signature appear on both documents. Defendants further submit letters to third parties signed by Ms. de Saro indicating that New England Capital owned the paintings. (Defs.' Mot. Ex. E, Items 8 and 9). Lastly, Defendants provide letters signed by New England Capital's attorney that clearly state that New England Capital owned the paintings. (Defs.' Mot. Ex. E, Items 10, 13, and 14).

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiffs' Motion for Summary Judgment and Plaintiffs' Motion to Dismiss New England Capital Investments as a Plaintiff in this Action be, and the same are hereby, DENIED. It is further

ORDERED and ADJUDGED that Defendants' Motion for an Order Compelling Plaintiffs to Designate and Produce a Rule 30(b)(6) Representative for Deposition be, and the same is hereby, GRANTED IN PART, as set forth above.

---

**10.** The Court set, by Order of August 29, 2003, a deadline of December 31, 2003 for the completion of all discovery in this case. Discovery is now finished and the record complete.