## In re UNITED FUNDING MORTGAGE CORP., Debtor.

**Robert B. Silliman, Trustee Plaintiff,**

*v.*

**Sean A. Murla, Tim Parker, Benjamin J. Charles and Peter Kyres, Defendants.**

**Bankruptcy No. 10–83213–BEM.**
**Adversary No. 11–5623–BEM.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Aug. 10, 2012.

William D. Matthews, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Plaintiff.

Kurt A. Raulin, The Raulin Professional Group, LLC, Halsey G. Knapp, Jimmy C. Luke, Foltz Martin, LLC, Atlanta, GA, Christopher W. Willis, Cumming, GA, for Defendants.

*ORDER GRANTING TRUSTEE'S MO- TION FOR SUMMARY JUDG- MENT ON COMPLAINT TO SUB- ORDINATE CLAIMS*

BARBARA ELLIS–MONRO, Bankruptcy Judge.

THIS MATTER is before the Court on Plaintiff Robert B. Silliman, Chapter 7 Trustee for the bankruptcy estate of Unit- ed Funding Mortgage Corporation's (the "Trustee" or "Movant") Motion For Sum- mary Judgment On Complaint To Subor- dinate Claims (the "Motion"). [Docket No. 10]. Defendants Sean A. Murla ("Murla"), Tim Parker ("Parker"), Benjamin J. Charles ("Charles") and Peter Kyres ("Kyres" and with Murla, Parker and Charles, "Defendants") did not file a re- sponse to the Motion.

The Trustee commenced this adversary proceeding by filing a complaint in which he seeks to subordinate claim numbers 55 and 56 filed by Murla, claim numbers 36 and 54 filed by Parker, claim numbers 48 and 52 filed by Charles and claim numbers 43 and 53 filed by Kyres (collectively, the "Claims") to all creditors' claims pursuant to 11 U.S.C. § 510(b). For the reasons set forth below, the Trustee's Motion is grant- ed.

**Material Undisputed Facts**

Defendants are the holders of one hun- dred percent of the preferred capital stock

of United Funding Corp. (the "Debtor"), having paid cash for such preferred capital stock at the time of Debtor's incorporation, organization and capitalization. (Trustee's Statement of Material Facts Not In Dispute, herein after "SMF", SMF ¶ 16). Defendants invested in excess of $3,750,000 in new consideration for the purchase of shares in the Debtor corporation in 2010, over $1,000,000 of which was made in the form of cash paid to the Debtor, its former officers, its former shareholders, and other former insiders. (SMF ¶ 17).

The Securities Purchase Agreement (the "Purchase Agreement"), whereby Defendants became Preferred Shareholders, called for the Preferred Investors to pay the following Aggregate Preferred Share Purchase Price for their purchase of Class A Cumulative Preferred Stock to be issued and sold by the Company (i.e. the Debtor): Murla to purchase 613 Preferred Shares for $306,500.00; Charles to purchase 187 Preferred Shares for $93,500.00; Kyres to purchase 500 Preferred Shares for $250,000; and Parker to purchase 200 Preferred Shares for $100,000.00. (SMF ¶¶ 10, 11). The Purchase Agreement further called for Murla to pay to the Selling Shareholders, and not to the Debtor, $750,000 for the purchase of common shares and further provided that "[u]pon the terms and subject to the conditions set forth in this Agreement, at the Closing, the Company shall issue and sell (i) to each Preferred Investor, and such Preferred Investor shall purchase from the Company, such Preferred Investor's Preferred Shares for a purchase price per Preferred Share of Five Hundred and No/ 100 Dollars ($500.00) (the 'Preferred Per Share Purchase Price')." (SMF ¶¶ 11, 13). Defendants acknowledged that they

were "accredited investors" as defined in Regulation D, promulgated under the Securities Act of 1933 as amended, and that they were acquiring the Preferred Shares for their own accounts for investment and not with a view to, or for sale in connection with, any distribution thereof, nor with any present intention of distributing or selling same. (SMF ¶¶ 14, 15).

Defendants made their investment in substantial and material reliance on the representations of the Debtor corporation, its former officers, former shareholders, and other former insiders as to the financial condition, assets and business of the Debtor, representations which have been proven to be materially false. (SMF ¶ 18). The Preferred Shareholders' claims sound not only in securities fraud and rescission for failure to comply with applicable state and federal securities laws, but also in common-law fraud and fraud in the inducement. (SMF ¶ 19). The Debtor corporation effectively and, acting through its former officers and other insiders, knowingly defrauded the four Preferred Shareholders of the new capital which they invested in the Debtor within three months of filing of the petition in the Debtor's Chapter 7 case and ... that few, if any, general creditors of the Debtor lent funds or otherwise extended credit to the Debtor in reliance on the additional capital injected into the Debtor by the four Preferred Shareholders. (SMF ¶ 20).

Each of the Defendants filed two proofs of claim in Debtor's chapter 7 case. Murla filed proof of claim No. 55 in the amount of $3,306,500.00 [1] for "securities fraud" and proof of claim No. 56 in the amount of $306,500.00 for "10% due as per stockholder agreement—preferred shareholder." (SMF ¶¶ 1, 2). Parker filed proof of claim

---

1. The basis for a claim in this amount is unclear. Plaintiff admits that Defendant Murla paid $306,500.00 to Debtor for the purchase of Preferred Shares. The larger amount may be an effort to add a claim for damages for fraud. (SMF ¶ 1).

No. 54 in the amount of $100,000.00 for "securities fraud" and proof of claim No. 36 in the amount of $100,000.00 for "200 preferred shares." (SMF ¶¶ 3, 4). Charles filed proof of claim No. 52 in the amount of $93,500.00 for "securities fraud" and proof of claim No. 48 in the amount of $93,500.00 for "10% due as per stockholder agreement—preferred shareholder." (SMF ¶¶ 5, 6). Kyres filed proof of claim No. 53 in the amount of $250,000,00 for "securities fraud" and proof of claim No, 43 in the amount of $259,931.51 for "Preferred Shareholder—initial investment of $250,000.00 (8/17/10) + 10% interest." (SMF ¶¶ 7, 8).

### Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court in accordance with Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this burden is met, the non-

moving party cannot merely rely on allegations or denials in its own pleadings. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Id.* When the material facts are not in dispute, the role of the Court is to determine whether the law supports a judgment in favor of the moving party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

### Discussion of Law

The Trustee seeks summary judgment on his claim to subordinate each of the Claims pursuant to 11 U.S.C. § 510(b). Defendants did not respond to the Motion and did not file a response to the SMF, thus the material facts contained in the SMF are deemed admitted. *See* BLR 7056–1(a)(2). Accordingly, the Court must now determine whether the law supports judgment in favor of the Trustee.

Section 510(b) of the Bankruptcy Code (hereinafter the "Code") states:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

"Section 510(b) requires the subordination of three distinct categories of claims: (1) a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor; (2) a claim for damages arising from the pur-

chase or sale of a security of the debtor or an affiliate of the debtor; and (3) a claim for reimbursement or contribution allowed under 11 U.S.C. § 502 on account of either (1) or (2)". *In re SeaQuest Diving, LP,* 579 F.3d 411, 418 (5th Cir.2009). Pursuant to § 101(49)(a)(ii) of the Code, stock is included within the definition of a security. Thus, the Court must determine whether the Claims arise from either the rescission of a purchase of a security of the Debtor or are for damages arising from the purchase of a security of the Debtor.

In adding section 510(b) to the Code, Congress' main concern was with "the effort of disaffected stockholders to recapture their investments from the debtors, regardless of the exact nature of their claims." *SeaQuest,* at 421 (citing *In re Granite Partners, L.P.,* 208 B.R. 332, 337 (Bankr.S.D.N.Y.1997); *see also, Baroda Hill Invs., Ltd., v. Telegroup, Inc. (In re Telegroup, Inc.),* 281 F.3d 133, 142 (3rd Cir.2002); *see also, Rombro v. Dufrayne (In re Med Diversified, Inc.),* 461 F.3d 251 (2nd Cir.2006) (subordinating claim on account of failed stock exchange because subordination furthered the risk and return expectations of shareholders and creditors even though it did not promote the reliance of creditors on the equity cushion provided by shareholder investment rationale underlying section 510(b)). In light of Congress' concern, the Second, Third, Fifth, Ninth and Tenth Circuits have interpreted section 510(b) broadly to include not only claims alleging illegality in the issuance of securities, which "fall squarely within the intended scope of § 510(b)" but also to include those claims that have some nexus or causal relationship between the claim and the sale or purchase of securities. *See, Telegroup,* at 140; *see also SeaQuest,* at 421–422; *In re NAL Fin. Grp., Inc.,* 237 B.R. 225, 231 (Bankr.S.D.Fla.1999) (holding that "[t]he phrase "arising from" signifies some causal connection").

■ Defendants seek to recover damages in claim numbers 52, 53, 54 and 55, stating that the claims are for rescission and fraud perpetrated when Defendants purchased Debtor's stock. These claims for fraud in the sale of a security of the debtor fall squarely within the intended scope of section 510(b) and are subject to mandatory subordination.

■ Defendants also seek to recover the purchase price of the stock in claim number 36 (Parker) or the purchase price plus a ten percent (10%) return in claim numbers 43, 48 and 56 (Murla, Charles and Benjamin). Defendants' attempt to recoup the purchase price and anticipated return on investment in the Debtor is an attempt to elevate shareholders' claims over creditors' claims and, again, is squarely within the scope of section 510(b). Moreover, claim numbers 36, 43, 48 and 56 are connected to the purchase of a security of the Debtor because, if Defendants had not purchased the Debtor's stock, they would not have claims for the purchase price or the return anticipated on their investments in the Debtor. Thus, claim numbers 36, 43, 48 and 56 are subject to the mandatory subordination under section 510(b).

Accordingly, it is

**ORDERED** that the Trustee's Motion for Summary Judgment is granted and Defendants' claims, claim numbers 36, 43, 48, 52, 53, 54, 55 and 56 are hereby subordinated pursuant to 11 U.S.C. § 510(b). Pursuant to Federal Rule of Civil Procedure 58 applicable to this Court in accordance with Federal Rule of Bankruptcy Procedure 7058, a separate judgment will be entered.

**IT IS SO ORDERED.**